SILVERMAN ACAMPORA LLP
Adam L. Rosen, Esq. (AR-5664)
Lon J. Seidman, Esq. (LS-0330)
100 Jericho Quadrangle, Suite 300
Jericho, NY 11753
Telephone: (516) 479-6300
Facsimile: (516) 479-6301

PAGE & JORGENSEN LLP
Jeanne M. Jorgensen, Esq. (Bar No. 185494)
5160 Campus Drive
Newport Beach, California 92660
Telephone: (949) 250-7181
Facsimile: (949) 250-7182

Attorneys for Plaintiffs Obayashi Corporation
and Peck/Jones-Obayashi

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
In re:                                           :        Chapter 7
                                                 :
ALAN G. FRIEDBERG,                               :        Case No. 08-35875 (cgm)
                                                 :
            Debtor.                              :
                                                 :
---------------------------------------------------x
                                                 :        Adversary Proceeding No. _____
OBAYASHI CORPORATION,                            :
a Japanese Corporation;                          :
PECK/JONES-OBAYASHI, a joint                     :
venture,                                         :
                                                 :
            Plaintiffs.                          :
                                                 :
vs.                                              :
                                                 :
ALAN G. FRIEDBERG,                               :
                                                 :
            Defendant.                           :
                                                 :
                                                 :
                                                 :
                                                 :
---------------------------------------------------x

## COMPLAINT FOR NONDISCHARGEABILITY OF DEBTS PURSUANT TO
## SECTIONS 523(a)(2), (4) and (6) OF THE BANKRUPTCY CODE

1

Plaintiffs Obayashi Corporation, a Japanese corporation, and Peck/Jones-Obayashi, a California joint venture (collectively, "Plaintiffs"), complain and allege as follows:

## PARTIES

1.      Plaintiff Obayashi Corporation ("Obayashi") is, and at all times mentioned herein was, a Japanese corporation organized and existing under the laws of Japan.

2.      Plaintiff Peck/Jones-Obayashi (the "Joint Venture") is, and at all times mentioned herein was, a joint venture organized and existing under the laws of California.

3.      Plaintiffs are informed and believe and thereon allege that debtor and defendant Alan G. Friedberg ("Defendant") is an individual who resided or resides and/or conducted or conducts business in California and/or New York.

## JURISDICTION AND VENUE

4.      On or about April 27, 2008 (the "Petition Date"), Defendant filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

5.      This Court has jurisdiction over all claims asserted by the Plaintiffs herein pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The claims for relief alleged by the Plaintiffs arising under sections 523(a)(2), (4) and (6) of the Bankruptcy Code in Defendant's chapter 7 bankruptcy case pending before this Court are "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(I).

6.      Venue of this action properly lies in this Court pursuant to 28 U.S.C. § 1409, in as much as Defendant's Bankruptcy Case, to which this matter is related, is pending in this district.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Affiliates, Agents and Co-Conspirators of Defendant

7.      Plaintiffs are informed and believe and thereon allege that Peck/Jones Construction Corporation ("Peck/Jones") is and at all times herein mentioned was a corporation organized under the laws of the State of California, doing business in California, including the County of Los Angeles California.  Peck/Jones is a debtor in a chapter 7 bankruptcy case, pending in United States Bankruptcy Court for the Central District of California, Case No. LA 04-35757-VZ.

LJS/D270484v/F055492

8.    Plaintiffs are informed and believe and thereon allege that Guillermo Montero ("Montero") is and at all times herein mentioned was an individual residing in the State of California and doing business in California, including the County of Los Angeles.

9.    Plaintiffs are informed and believe and thereon allege that J. Gregory Jones ("Jones"), is and at all times herein mentioned was an individual residing in the State of California and doing business in California, including the County of Los Angeles.  From at least January 2002 until January 2005, Jones was the president of Peck/Jones.

10.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each of Defendant, Montero, Peck/Jones, and Jones was the agent, representative, servant, employee, and/or alter ego of each other, and at all times mentioned herein was acting within the course and scope of such agency and with the permission and consent of the others.

11.    Plaintiffs are informed and believe and thereon allege that the various acts and representations of Defendant and Montero were made in furtherance of an agreement whereby each of them conspired with the other to fraudulently divest Peck/Jones and the Joint Venture of its assets and divide such assets between them.

12.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned Defendant and Montero were the alter egos of Peck/Jones and that there existed a unity of interest and ownership among them such that any separateness had ceased to exist, and Defendant and Montero used assets of Peck/Jones for their personal uses, causes assets of Peck/Jones to be transferred to them without adequate consideration, and withdrew funds from Peck/Jones' bank accounts for their personal use.

13.    For the reasons set forth above, among others, adherence to the fiction of the separate existence of Peck/Jones from Defendant and Montero would, under the circumstances, sanction a fraud and promote injustice in that, among other reasons, Peck/Jones is insolvent at least in part as a result of Defendant and Montero's actions, and Plaintiffs would be denied the relief for which it is entitled for the actions complained of herein.

LJS/D270484v/F055492

**Obayashi and Peck/Jones Form the Joint Venture**

14.     On or about February 29, 2000, Obayashi entered into a joint venture agreement (the "Joint Venture Agreement") with Peck/Jones, pursuant to which the Joint Venture was formed.  A true and correct copy of the Joint Venture Agreement is attached hereto as Exhibit "A" and incorporated herein by this reference

15.     Pursuant to the terms of the Joint Venture Agreement, Obayashi and Peck/Jones formed the Joint Venture for the purpose of performing pre-construction services on the Cedars Sinai Medical Center, Diagnostic and Treatment Center project (the "Cedars Sinai Project").

16.     To facilitate the business of the Joint Venture in connection with the Cedars Sinai Project, the Joint Venture maintained bank accounts in its name at Wells Fargo bearing Wells Fargo account numbers 663-1559317 and 201-7946617 (the "Wells Fargo Accounts").

17.     As managing party under the Joint Venture Agreement, Peck/Jones controlled the day-to-day operations of the Joint Venture.

18.     The Joint Venture Agreement, at paragraph 4 thereof, provided that a Joint Venture Executive Committee (the "Executive Committee") would be established and be compromised of one designated representative (or alternate if the representative was unavailable) of each member, which representative could be changed by notifying the other member of the change in writing. Pursuant to paragraph 4(c) of the Joint Venture Agreement, the following matters, among others, could only be determined by a unanimous resolution of the Executive Committee:  (a) borrowing or financing in the name of the Joint Venture; (b) appointment and replacement of key personnel; and (c) change of bank accounts or bank procedures.

**Defendant Surreptitiously Usurps Control of Peck/Jones and the Joint Venture**

19.     Plaintiffs are informed and believe and thereon allege that in or about May 2002, Defendant and his then-business partner, Guillermo Montero ("Montero"), entered into a Term Sheet dated May 2, 2002 (the "Term Sheet"), whereby Defendant and Montero agreed to buy all of the equity in Peck/Jones.

4

20.     Upon information and belief, although the Term Sheet was never fully consummated, Defendant nonetheless assumed the de facto position of controlling shareholder and chairman of the board of directors of Peck/Jones.

21.     Plaintiffs are informed and believe and thereon allege that from 2002 until approximately January of 2005, unbeknownst to Plaintiffs, Defendant was holding himself out to those within Peck/Jones as the "principal" and "head guy" at Peck/Jones, and exercised control over the business and financial decisions of Peck/Jones by, among other things:  reviewing Peck/Jones' financial statements and giving instructions to Peck/Jones' employees regarding same; exercising control over Peck/Jones' bank accounts and regularly transferring money in and out of those accounts; and regularly transferring working "capital" in and out of Peck/Jones.

22.     Plaintiffs are informed and believe and thereon allege that by virtue of his de facto control of Peck/Jones and Peck/Jones' position as the managing member of the Joint Venture, Defendant also assumed control of the financial and business operations of the Joint Venture. Despite the fact that the Joint Venture Agreement designated Dan A. Penn and William S. Driver as the representatives authorized to act on behalf of Peck/Jones with respect to Executive Committee decisions, Defendant assumed the position of Peck/Jones representative. Notwithstanding their duty to do so, neither Defendant, nor anyone else at Peck/Jones informed Obayashi of this change and, in fact, Defendant and others at Peck/Jones actively concealed the fact that Defendant had taken control of Peck/Jones and the Joint Venture.

**Defendant's Fraud, Larceny and Breach of Fiduciary Duty By, Among Other Things, Using Funds Belonging to the Joint Venture for His Personal Benefit**

23.     Although Plaintiffs are informed and believe that Defendant was never elected as an officer of Peck/Jones, Defendant nonetheless executed and delivered to UBS PaineWebber, Inc., a predecessor of UBS Financial (hereinafter collectively, "UBS"), Corporate Resolutions and Supplemental Corporate Resolutions (Lending) (together, the "Resolutions") purporting to be an officer of Peck/Jones with authority to act on behalf of Peck/Jones with respect to Peck/Jones banking and financial matters and to borrow money on behalf of Peck/Jones.  A copy of the

5

Resolutions are attached hereto as <u>Exhibit "B"</u> and incorporated herein by this reference. Plaintiffs are informed and believe that Defendant executed the Resolutions for the purpose of inducing UBS to make a loan to Peck/Jones in the form of a revolving line of credit.

24.     On or about January 9, 2003, Defendant and Montero, purporting to act on behalf of Peck/Jones, executed a Premier Variable Credit Line Agreement (the "Credit Line Agreement") whereby UBS agreed to furnish a revolving line of credit to Peck/Jones identified by UBS Account No. 5V01427 TP (TP 23529 MC) (the "Credit Line").  A copy of the Credit Line Agreement is attached hereto as <u>Exhibit "C"</u> and incorporated herein by this reference.  Although the Defendant caused the Credit Line to be issued in Peck/Jones' name, Plaintiffs are informed and believe that Defendant intended to and did in fact use the moneys advanced by UBS under the credit line for his own personal benefit.  The Credit Line Agreement required Peck/Jones to maintain certain collateral accounts to secure the Credit Line.

25.     Without the knowledge of Obayashi and in violation of the Joint Venture Agreement, Defendant caused to be opened, in the name of the Joint Venture, a bank account with UBS identified by Account No. TP 32677 MC (the "UBS JV Account").  Plaintiffs are informed and believe that UBS JV Account was opened for the purpose of transferring funds from the Joint Venture's Wells Fargo Accounts to UBS to collateralize the Credit Line.

26.     Thereafter, in or about November 2003, without the knowledge or consent of the Joint Venture, Defendant caused to be executed and delivered to UBS, a Premier Supplemental Corporate Resolutions (Lending), purportedly executed by Montero on behalf of the Joint Venture, and purporting to authorize the pledge of the UBS JV Account as additional collateral for the Line of Credit.

27.     Notwithstanding the fact that Defendant was not authorized to act on behalf of the Joint Venture, Defendant represented to UBS and Wells Fargo that he was so authorized and executed written instructions, purportedly on behalf of the Joint Venture for the transfer of funds between the UBS JV Account and the Wells Fargo Accounts.  Copies of two of such written instructions are attached hereto as <u>Exhibit "D"</u> and incorporated herein by this reference.

LJS/D270484v/F055492

28.     Plaintiffs are informed and believe that, during the period from January 2002 through January 2005, Defendant caused Peck/Jones to borrow more than $5,000,000.00, which was used in whole or in part for the purposes of making payments to Defendant on account of an alleged, undocumented, unsecured loan made by Defendant to Peck/Jones.

29.     Plaintiffs are informed and believe and thereon allege that, as a result of Defendant's use of Peck/Jones' funds for his personal benefit and Defendant's draws against the Credit Line in the net amount of more than $5,000,000.00, the amount in the required collateral accounts was less than the outstanding balance of the Credit Line, and on about July 20, 2004, UBS sent Peck/Jones a written demand that Peck/Jones immediately repay the balance owed or deposit additional collateral to secure the Credit Line.  After Peck/Jones failed to do so, UBS "swept" the collateral accounts, including the UBS JV Account, resulting in approximately $2,075,561.48 being transferred out of the UBS JV Account.

30.     After the Joint Venture became aware of the unauthorized transfer, Defendant agreed to personally guaranty the return of the funds.  In that regard, on or about October 11, 2004, Defendant executed a guaranty for the benefit of Obayashi and the Joint Venture (the "Guaranty").  However, Defendant failed to fully repay the money owed to the Joint Venture and as a result Obayashi and the Joint Venture have been damaged by the conduct described above in the amount of at least $520,893.71.

31.     On January 21, 2005, Plaintiffs filed a lawsuit against Defendant, among others, in the Superior Court of the State of California, County of Los Angeles (the "State Court"), Case No. BC327546.  On or about October 11, 2007, the Court in the lawsuit filed its Judgment in Favor of Obayashi Corporation and Peck/Jones-Obayashi against Alan G. Friedberg (the "Judgment"), pursuant to which Plaintiffs were awarded judgment against Defendant in the amount of $520,893.71.  A copy of the Judgment is attached hereto as Exhibit "E" and incorporated herein by this reference.

LJS/D270484v/F055492

## **FIRST CAUSE OF ACTION**
### (Bankruptcy Code § 523(a)(2))

32.     Plaintiffs incorporate herein Paragraphs 1 through 31 above as though fully set forth herein.

33.     As alleged with more particularity above, Defendant, and his agents, alter egos and co-conspirators made false written and oral misrepresentations to UBS and Wells Fargo, who were the agents of Plaintiffs and custodian of the Joint Venture's bank accounts, which representations include the following:

(a)     That Defendant was an officer or director of Peck/Jones and an agent of the Joint Venture authorized to act on behalf of the Joint Venture with respect to the Joint Venture's bank accounts, when in fact Defendant was neither an officer or director of Peck/Jones nor an authorized agent of the Joint Venture

(b)     That Defendant was authorized to pledge the JV UBS Account as collateral for the Credit Line, when in fact Defendant was not authorized to pledge the JV UBS Account or any other Joint Venture bank account as collateral for any obligation; and

(c)     That Defendant was authorized to act on behalf of the Joint Venture to transfer funds between and among the Wells Fargo Accounts and the JV UBS Accounts, when in fact Defendant was not so authorized.

34.     Plaintiffs are informed and believe and thereon allege that when Defendant and his agents, alter egos, and/or co-conspirators made these representations, they knew them to be false and made the representations with the intention to deceive and defraud Plaintiff, through its agents, UBS and Wells Fargo, and to induce Plaintiffs and their agents to act in reliance on these representations in the manner herein alleged, or with the expectation that they would so act.

35.     At the time that these representations were made, Plaintiffs' agents, UBS and Wells Fargo, were ignorant of the falsity of the representations and believed them to be true.  In reliance on these representations, Plaintiff's agents, UBS and Wells Fargo, were induced to and did make

LJS/D270484v/F055492

certain transfers of Plaintiffs' funds and pledge certain assets of Plaintiffs as set forth more fully above.

36.  In addition, as alleged with more particularity above, Defendant and his agents, alter-egos and co-conspirators, each of which was a fiduciary to the Joint Venture, concealed or otherwise failed to disclose the following material facts that he had a duty to disclose:

(a)  That Defendant had assumed de facto control of Peck/Jones and was using that position of control to exercise control over the Joint Venture;

(b)  That Defendant and his agents, alter egos and/or co-conspirators were borrowing or financing in the name of the Joint Venture and pledging the Joint Venture's assets as collateral; and

(c)  That Defendant and his agents, alter egos and/or co-conspirators were changing the Joint Venture's bank accounts and/or the bank procedures relating to such accounts.

37.  Plaintiffs are informed and believe and thereon allege that the concealment and/or failure to disclose the material facts herein alleged were done with the intent to induce Plaintiffs to act or refrain from acting as herein alleged.

38.  Plaintiffs, at all times herein alleged, were ignorant of the existence of the facts which Defendants and his agents, alter egos and/or co-conspirators failed to disclose.  If Plaintiffs had been aware of the existence of the facts not disclosed, Plaintiffs would have taken steps to inform UBS and Wells Fargo of Defendant's lack of authority and otherwise protect the Joint Venture's assets, including the funds held in the UBS JV Account.

39.  As a proximate result of Defendant's and his agents, alter egos and/or co-conspirators fraudulent misrepresentations, concealment and/or failure to disclose as set forth above, Plaintiffs have been damaged in the amount of not less than $520,893.71, subject to proof at the time of trial.

LJS/D270484v/F055492

40.     The misrepresentations, concealment of facts and fraudulent activities alleged herein constitute false pretenses, false representations and actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

41.     In light of the misrepresentations, concealment of facts and fraudulent activities by Defendant and his agents, alter egos, and/or co-conspirators Plaintiffs have been and will continue to be injured unless the Court excepts the Plaintiffs' claims against the Debtor from being discharged.

## SECOND CAUSE OF ACTION
(Bankruptcy Code § 523(a)(4))

42.     Plaintiffs incorporate herein Paragraphs 1 through 41 above as though the same were set forth in full hereat.

43.     By virtue of his position as the actual and/or ostensible agent, alter-ego, and/or co-conspirator of Peck/Jones and Peck/Jones relationship as the managing member of the Joint Venture, Defendant was a fiduciary of Plaintiffs.

44.     Defendant breached his fiduciary duties by, among other things:

(a)     Failing to disclose to Plaintiffs that Defendant had assumed de facto control of Peck/Jones and was using that position of control to exercise control over the Joint Venture;

(b)     Failing to disclose to Plaintiffs that Defendant and his agents, alter egos and/or co-conspirators were borrowing or financing in the name of the Joint Venture and pledging the Joint Venture's assets as collateral in direct contravention of the Joint Venture Agreement;

(c)     Failing to disclose to Plaintiffs that Defendant and his agents, alter egos and/or co-conspirators were changing the Joint Venture's bank accounts and/or the bank procedures relating to such accounts, in direct contravention of the Joint Venture Agreement;

10

(d)     Falsely representing to UBS that Defendant was an officer or director of Peck/Jones and an agent of the Joint Venture authorized to act on behalf of the Joint Venture with respect to the Joint Venture's bank accounts, when in fact Defendant was neither an officer or director of Peck/Jones nor an authorized agent of the Joint Venture

(e)     Falsely representing to UBS that Defendant was authorized to pledge the JV UBS Account as collateral for the Credit Line, when in fact Defendant was not authorized to pledge the JV UBS Account or any other Joint Venture bank account as collateral for any obligation; and

(f)     Falsely representing to UBS and Wells Fargo that Defendant was authorized to act on behalf of the Joint Venture to transfer funds between and among the Wells Fargo Accounts and the JV UBS Accounts, when in fact Defendant was not so authorized;

(g)     Using funds belonging to the Joint Venture or the proceeds of loans made to Peck/Jones and secured by Joint Venture assets for Defendant's own personal benefit and gain.

45.     By these actions, Defendant not only breached his fiduciary duty to Plaintiffs, but also committed larceny and/or embezzlement of the Plaintiffs' funds by wrongfully taking possession of $2,075,561.48 to be taken from the UBS JV Account with the intent to convert such money for Peck/Jones' and/or Defendant's personal use.

46.     As a proximate result of the conduct described above, Plaintiffs have been damaged in the amount of not less than $520,893.71, subject to proof at the time of trial.

47.     The conduct described above constitutes fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny within the meaning of 11 U.S.C. § 523(a)(4).

48.     Plaintiffs have been and will continue to be injured unless the Court excepts the Plaintiffs' claims against the Debtor from being discharged.

11

## THIRD CAUSE OF ACTION
### (Bankruptcy Code § 523(a)(6))

49.     Plaintiffs incorporate herein Paragraphs 1 through 48 above as though the same were set forth in full hereat.

50.     As more fully described above, Defendant engaged in a scheme to defraud Plaintiffs out of $2,075,561.48, causing Plaintiffs substantial damage.  Defendant's conduct in furtherance of such scheme was knowing, deliberate and without justification or excuse with an intent to cause harm to Plaintiffs.

51.     Defendant's conduct, as described above, was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

52.     In light of Defendant's willful and malicious acts, Plaintiffs have been and will continue to be injured unless the Court excepts Defendant's debt to Plaintiffs from being discharged.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant, as follows:

1.   For a determination that Defendant owes Plaintiffs the debt described hereinabove and that such debt owed to Plaintiffs for at least $520,893.71, plus interest, is excepted from any discharge which may be granted to the Debtor in the Bankruptcy Case pursuant to 11 U.S.C. § 523(a)(2)(A);

2.   For a determination that Defendant owes Plaintiffs the debt described hereinabove and that such debt owed to Plaintiffs for at least $520,893.71, plus interest, is excepted from any discharge which may be granted to the Debtor in the Bankruptcy Case pursuant to 11 U.S.C. § 523(a)(4);

3.   For a determination that Defendant owes Plaintiffs the debt described hereinabove and that such debt owed to Plaintiffs for at least $520,893.71, plus interest, is excepted from any discharge which may be granted to the Debtor in the Bankruptcy Case pursuant to 11 U.S.C. § 523(a)(6);

4.   For reasonable attorneys' fees;

LJS/D270484v/F055492

5. For costs of suit; and

6. For such other and further relief as the Court deems just and proper.

Dated:  August ___, 2008                 SILVERMAN ACAMPORA LLP


By: _____*s/Lon J. Seidman*_____
      Lon J. Seidman (LS-0330)
      100 Jericho Quadrangle, Suite 300
      Jericho, NY 11753

- and -

PAGE & JORGENSEN LLP
Jeanne M. Jorgensen, Esq.
5160 Campus Drive
Newport Beach, CA  92660

ATTORNEYS FOR PLAINTIFFS
OBAYASHI CORPORATION and
PECK/JONES-OBAYASHI

LJS/D270484v/F055492